Our first case is 23-9502 Coreslab Structures v. NLRB. Mr. Murray? May it please the Court, good morning. I'd like to note at the outset my intention is to reserve five minutes of rebuttal. We'll see. This case involves, or this appeal involves a petition for review of a decision in order of the National Labor Relations Board. The respondent, Coreslab, produces bridge components at a facility based in Tulsa, Oklahoma. Oklahoma is a right-to-work state. This is a unionized facility, and the board's order grows out of two unfair labor practice charges that were filed in September of 2019. As background to those two charges, for 14 years before those unfair labor practice charges were filed, the company had engaged in certain pension contribution practices and profit-sharing practices. Specifically, with respect to the requirement under the collective bargaining agreement that the company make contributions to a pension program, the company had made those contributions only on behalf of those employees who were members of the union. That practice had begun in 2005, shortly after the union began representing employees at the facility. Counsel, may I interrupt you? I wanted to get your perspective on how we should be thinking about your 10B defense in this case. Your contention is that the defense was not forfeited, correct? Yes, Your Honor. If we agree with you, how does that affect the analysis in this case? Does it change the framing of how we are going to be thinking about notice and knowledge and so forth? Yes, Your Honor. The statute of limitations for the filing of an unfair labor practice charge is six months. As I noted, this practice has been ongoing since 2005, and the unfair labor practice charges were filed in September of 2019. Our position is that those unfair labor practice charges were far untimely, and therefore the board should simply—they should have been denied. When was notice triggered under that theory? I'm sorry, Your Honor, I didn't hear you. When was notice triggered? When was the statute of limitations triggered? To follow up on Judge Rossman's point. Since at least 2005, is our position, Your Honor. The union's stewards were informed of these practices at the time, in 2005, and had known of those practices throughout that time period. So that actually goes to my question. To determine when the statute of limitations ran, we are still looking at the same sorts of concerns about notice and constructive knowledge and so forth that would be relevant to the substantive violation inquiry. Is that a correct understanding? Yes, Your Honor. Yes. Particularly with respect to the modification of the contract, because those issues also relate to the union's knowledge, whether it's actual or constructive knowledge. Their knowledge and essentially waiver of any objection to the company's practices and apparent acceptance of those practices. So yes, Your Honor, that would also go back to 2005 on those issues. Well, we're reviewing for substantial evidence, and is there any evidence in the record that Mr. Drew told the union chief, Evans, about the profit sharing plan? I can do, Your Honor, that the testimony on that was that he had not directly told Mr. Evans about the profit sharing plan. So if we're to rule in your favor, all information flows through Mr. Prince, correct? Through Mr. Prince. There was also, I believe, another steward at the outset. I'm sorry, I don't recall his name at the moment, but it was primarily Mr. Prince. And even though Drew never told Evans, is there anything in the record that would indicate that Coors Lab thought that the union was aware of the different program? Your Honor, I think that goes to particularly the constructive knowledge, or a constructive notice issue. Mr. Prince, for example, did sit at the bargaining table during at least two, and I believe three, negotiations over subsequent collective bargaining agreements. And he didn't participate, though, and how should we be thinking about that? Well, the board has argued that he didn't participate. He was present at the table. The board argues that he didn't speak, but he was there across the table on the other side, sitting, presumably, sitting next to the union's business manager. Certainly, the company, it would be reasonable for the company to assume that he was part of the union's negotiating team. Was his presence required? I don't know, Your Honor. I'm afraid I don't know the answer to that question. So Evans was the business manager? I wasn't sure of his title. Yes, Your Honor. That's not the top position in the local, though, is it? I believe there's a position of president. I don't recall if Mr. Evans also occupied that position at any time. On the limitations period, though, even if you're right about construction or actual notice, there was a finding of an unfair labor practice by discriminating against union members, treating nonunion members and union members differently. They could bring that claim for the prior six months, could they not? It wouldn't wipe out the unfair labor practice charge totally. They could seek a remedy for what had happened beginning six months before they filed charges, wouldn't they? I don't know the answer to that question, Your Honor. It's a kind of a continuing violation theory. Right. Which I do not believe. If you continue to pollute water, maybe there's a limitations period about far distant past, but you can recover for the last six months. And I think, Your Honor, that also goes to the other theory, the A885 contract modification theory, that if the union is deemed to have agreed to this course of conduct as of 2005, then the company is not discriminating under the contract as— on the test for whether there's constructive knowledge that would affect the limitations period, isn't it? Do you think they're identical tests? They're very similar, Your Honor. Don't you think there could be constructive knowledge because of just total malpractice by the business manager in trying to figure out what was going on, but still would not suggest that the union had constructively agreed to the practice? At that point, I think it would be estoppel or waiver, Your Honor, by the union. What's the detrimental reliance that would apply for the last six months? Well, do we—maybe this is the bottom line. Would we need to remand, then, for the NLRB to resolve the issue? We believe because the issue is simply outside the statute of limitations, we don't believe—we believe this court is simply told that it will not enforce the board's order. The board was aware of these various issues and arguments and elected not to address them, even in the alternative. So we believe that this board is— Let's start with some agencies. For example, one we see the most, the Board of Immigration Appeals. If we think they goofed, we can't correct it. We send it back to them to revise it. Is it different with the NLRB? The court does have the power to enforce an order in part. So a partial—so to the extent that they're making components of the board's order that the court believes were properly decided, it could elect to enforce those in part. I don't know if that's quite the same as a remand in the other situation, Your Honor, but that is an option that would be applicable to the court. And here in particular, with respect to the order, the remedies, the remedies to—for the company to basically pay all of the employees both profit sharing and pension benefits. Counsel, as to the remedy, your friend on the other side contends that you have waived your make whole remedy challenge under 10E. And so we lack jurisdiction to consider that. Why is that incorrect? And that is because irrespective of exceptions that are filed, the board simply does not have the statutory authority to enter the remedy that it entered. And that goes to the Supreme Court's Republic of Steel case. So I gather your argument then is even if you didn't raise it, it's jurisdictional, so you can raise it now. Yes, Your Honor. Okay. It doesn't sound jurisdictional. Why do you think it's jurisdictional? Your Honor, I'm not sure jurisdictional is how I would characterize it. It's really more statutory authority. The board simply does not have—the court is— Well, there are lots of things that it can do wrong, and you can't get correction from this court because you didn't preserve it with the agency. And you're saying this is a special type of error, and I'm trying to see what's so special about it. The error is the Supreme Court has made clear that the board under the National Labor Relations Act is limited to make whole remedies. It can only make whole—put employees in a position that would have been—had there been no violation. And why is an error in that regard more amenable to remedy in this court when it wasn't preserved below than other errors? In this respect, because this—the board's order—this court has the authority to say that it will not enforce the board's order because the board's order was beyond the board's authority. If that— Okay. And you cited all the authority you could find on that. The Republic steals our primary case here, Your Honor, yes. And if I may, I'd like to reserve the remainder of my time unless the court has further questions at this point. Thank you. Mr. Keller. Good morning. May it please the Court, Joe Keller for the National Labor Relations Court. The undisputed facts of this case show that Coors Lab had a two-tier system where what benefits you got depended solely on whether you were a member of the union, that this system was inconsistent with the terms of the collective bargaining agreement, and that it had been implemented unilaterally without bargaining with Article 67. The board's finding that these and other Coors Lab actions violated the National Labor Relations Act were supported by substantial evidence and thoroughly explained in the board's decision. So we'll start with the discrimination violation. As I just said, the undisputed facts are that if you were not a member of Local 627, you got profit sharing. If you were a member, you got pension contributions. And this kind of facial discrimination is, under the Supreme Court's theory of great dame, is a straightforward violation of Section 883. This court's decision in Forest Products says pretty much the same thing. It says when it discriminates solely on the basis of participation in union activity, that is inherently destructive of employee rights and violates Section 883 under the great dame theory of the Supreme Court. The board found that here. They said that the Coors Lab's action bears its own indicia of intent, which is the language from great dame explaining what is an inherently destructive action that violates Section 883. Is that an irrebuttable showing of intent? No, it is not irrebuttable, Your Honor. Well, does the fact that there was a misunderstanding of the law, that they were out to hurt the union, they thought they couldn't provide retirement benefits to the non-union employees, does that make any difference here? Well, what the employer would have to do is present a legitimate business justification. And the board found that they didn't do that. Because their argument, what they were saying is, well, we paid profit sharing to non-members because we weren't paying them pension contributions. But that is essentially saying our defense to this unfair labor practice is that we were committing a different unfair labor practice. And the board found that cannot be a legitimate business justification. What is the intent that has to be shown? Is it an intent to discriminate against the union? An intent to discriminate on the basis of protected activity or union activity. And this kind of facial discrimination, the Supreme Court says, bears its own indicia of intent. Also, the Section 885 violations, these were unilateral changes and midterm modifications to the collective bargaining agreement. Again, these are undisputed facts. This is what everyone knows that this is what Coors Lab was doing. And of course, their argument in response is the knowledge piece. But typically, as you were saying, this is a substantial evidence question. Well, they weren't hiding the weeds with any of this. I mean, the discussions about the disparate policies was open on the floor. The company made it clear. Mr. Prince was there for a decade and a half, never said anything. I mean, it seems like the company could reasonably conclude that the union was aware of the disparate plan and at least tacitly agreed to it. I think there are a couple of issues there. I mean, one is the question of actual knowledge and the facts, the undisputed. Yeah, I guess it is undisputed testimony because there's testimony from both union figures and employer figures, was that no one ever told anyone at like Local 627 about this. The employer didn't tell them, employees told them, the steward didn't tell them. So as far as actual knowledge, we don't have anything going the other way of the board's decision. That kind of comes to the agency question of Mr. Prince then. And, you know, why wouldn't a company reasonably believe that, you know, telling the steward about this system was just as good as telling anybody else? I mean, is there, does the collective bargaining agreement require some specific type of notice or can we impute notice or knowledge on these facts? Not on these facts. Certainly sometimes there's imputation of knowledge from a steward to a union. But it has to be about the specific piece of knowledge you're trying to impute. It's not agency status, it's not an all or nothing proposition. And so the facts of this case is that the steward's role was as a go-between between the union and employees. What do we look to to define his role? You look to the testimony of what he was doing and testimony from both Mr. Prince, the steward, from Evans, the local president, and from Drews, the general manager of the company. All of them were saying that Mr. Drews didn't interact with the stewards. That there was no incident in which the company would tell the steward something and that the steward would tell that to the union. And you would also look to the fact that Mr. Prince, the steward, look at the things he was doing as a steward. He was dealing with grievances among the, I don't mean grievances in the kind of fidgy sense, but vigorant, he called it, between employees. He was not serving in a bargaining role. And yes, he was at the collective bargaining table, but as you were saying, Judge Rossman, the facts show that he didn't say anything. And no one at the union said, oh, this is Mr. Prince, he's our steward, he's part of the bargaining team. Stuff you tell to him is as good as stuff you tell to us. The kind of evidence that would go to a parent authority. Representations by the principal that would make the employer think, well, this guy, Prince, is the agent. We don't have any evidence of that. Let me ask you about constructive knowledge. Yes. That's the real issue here, because if the union should have recently discovered this, then there's constructive notice. And I'll give you one side and then you can respond to it. It seems to me the union should be very embarrassed by Mr. Evans. This was completely deficient representation for him not to know about this over a course of 15 years. There had been two bargaining negotiations over the course of that time. And he never asked about pensions, which are a big deal. That's a big deal in labor negotiations. Never asked about them. He says he went to the facility regularly to orient new members. And he's telling them one thing and the steward is telling them another. And he didn't know that. He it's it's really hard for me to see how this was not unreasonable behavior on the part of the business manager. And you wouldn't. I'm really surprised that a business manager wouldn't know this and could give get the board's response to that. So the standard is reasonable diligence. Yes. The exercise of reasonable diligence. Right. The union has known about this. And so one point, a couple of points. One, yes, pensions are a big deal, but they had already negotiated for a pension. And the issue of pensions hadn't come up in the 2011 and the 2015 negotiations. And so it's not for the union to assume that the employer is not abiding by its obligations under the collective bargaining agreement. Less than half the members of the who are employed there belong to the union. Right. That's correct. They were all represented by the union. And the business manager never asked around. So why aren't you guys joining the union? We've got this great pension that we've gotten for you guys. And, you know, it's just never discussed pensions with the membership or negotiations or check to see what's going on. That's. I think you have to look at what actions that the union was taking more generally. Okay. Okay. Yeah. No. Compared with the facts of Mueller or a decision where the union in that case. So they have found constructive notice in that case. But the reasons they found is because the union representatives didn't come to the factory or to the facility. They came once every three years. The facts show. So we don't have that here. Evans was there on a regular basis, usually about once a month. Doesn't that make it worse? No, because he's there to orient them. What's he talking about in orientation? You have to look at whether he was in a position in which he might have learned about this. And so by being there, he didn't learn about it. But he was not. He didn't ask any questions, obviously. He obviously never asked anybody anything about pensions and never talked to them at orientation about pensions. Is that fair to say? Sounds fair to say, but I don't know one way or the other in the record if there's something about him asking questions. Certainly no employees were coming to him and telling him that this was an issue. I think the other point is this is not something that is readily observable. You come to the plant, and you see, well, people aren't being paid pensions like they're supposed to. Where in the Mueller brothers' case, the issue was the employer had filled out a paperwork saying, well, we're only paying benefits to four people here. And the union had this paperwork. But if they had come to the facility, they would have seen there are more than four people working here. But that's not the case with the pension contributions. Do you think Mueller is the minimum? I'm sorry. I think I noticed that. Yes, okay. The fact that Mueller was bad doesn't mean it can't be bad, even though it may not be as bad as Mueller, right? Fair enough. But we're engaged in a common law system. We have to look at what the precedent says in comparison to that. And so I don't think we're in a situation where, because the union didn't have access to the paperwork that was being filed about who they were paying pensions for. That all went to the pension fund. It's also true that there was no secret being kept of this from the members. That's correct. Yes, it was not being secretive as to the employees. And they had a man on the floor that was hearing this and was apparently fully aware of the separate trend. You mean the steward? Yeah. The steward is a rank-and-file employee. He's not an official of the union in any sense. So that gets back to the imputation. Right. If his knowledge is not imputed to the— Well, I'm building on Judge Hartz's point, is that if Evans is coming to orientation, he might ask his steward, how come half of the folks here don't want to join our union? And Prince might have said, well, they've got a separate track that's better because they get their money right away. But I think that all depends on the might there. The might has happened, but the board's finding is that it didn't happen. Well, we're talking about reasonable diligence. You're talking about 17 years, right? Something like that. A little less than that. Right. Okay. So, right. I think the board's finding is that there was no constructive knowledge. Yes. There are factual—based on factual determinations about what Evans was doing. Well, no. It's based on their view of what's reasonable diligence. I suppose that's true. But what is reasonable is based on the facts that were going on. And I'd be very deferential to the board, but I'm not sure I can go this far. Well— I'd like you to talk me out of it. I think you have to look at the—well, I— Okay. You're going into something else. I can answer questions if you have more, but I can also— I do have a question about remedy. Okay. You contend that Horselab's exceptions to the remedy were insufficient, that were jurisdictionally barred. If we agree that the argument is actually that the remedy is outside the board's statutory authority, you don't disagree that we would have the ability to review that, right? Correct. Right. We do recognize there is this exception for something outside of the board's statutory authority. What the Supreme Court has said is travel outside the orbit of—I'll get with the next noun. It's outside of the orbit, but I— So you agree that that legal principle is in play here but doesn't apply? That's correct. I do not believe it applies here. It is very rarely applied. I have certainly never seen it apply to challenges to the substantive validity of a board decision. I've seen it only in terms of things like jurisdiction, whether the board does lack jurisdiction over the employer at all. Well, I guess what I'm a little bit confused about is that in your brief, you spend a lot of time discussing the specifics of the failure of preservation to advance your 10E point. And I want to know if I need to worry about that if, in fact, we agree that it's an argument that goes to the statutory authority, that these sort of, you know, nitpicking the precision of preservation is not—it's an opposite to an argument of this sort that your friend is making. I think that's true. If 10E doesn't apply, then you don't have to worry about whether it was accepted to the level. I think the reason I didn't spend time in my brief on this ultraviarious argument is because it didn't show up in the reply brief. So I think that's one reason why the court certainly prudentially doesn't have to address that issue at all because it was not—it was waived for not being in the opening argument. But on the merits, I agree. It doesn't apply here. The reasons I was starting to get into is I've seen it apply in jurisdictional cases or in a case where the board as an entity just didn't have the power to issue any decision because, say, it lacked a quorum. But I have not seen it apply to anything like this where it's a challenge to the substantive validity. Republic Steel is not a 10E case. The Cheney-Lumber case they cited actually found that 10E did apply. And I think if you read it as broadly, the exception as broadly as they would have it, I think it becomes the exception that swallows the rule because you could argue that, well, the board only has statutory authority to remedy unfair labor practices. But that doesn't mean an employer can say any argument that we didn't commit an unfair labor practice is somehow not outside of 10E because that's every NLRB case. But isn't the—I'm sorry. No, go ahead. Isn't the specific argument in this case, though, that it's not sufficiently tailored, so it's the make whole remedy, that it's outside the scope of statutory authority because of the tailoring issue? So it's not as broad. I'm trying to understand the scope of their argument on this. And I don't think it's as broad as you're contending. I mean, they've narrowed it to the reason why it would be outside the scope of statutory authority. Do you agree? Let me tack on to that question because it's the same point. They're claiming it's punitive and there's no authority to have a punitive remedy. So if you'd include that in her question. Well, if you see my time is up, you won't get it. Yes, I'd like to hear you. So I think it's not as broad as my hypothetical, but such is the nature of hypotheticals. You zoom out and try to push where it's going. But I still think it's the same problem. I think that it doesn't resemble any of the types of arguments where this outside-of-the-orbit exception has applied. And I think the question of whether a remedy is remedial or punitive, it goes to the question of was it the correct remedy. Did the board abuse its discretion in issuing this remedy? And if it's a punitive remedy, then that is an abuse of discretion. But it doesn't go to the kind of big A authority of the board in a kind of jurisdictional sense where this exception, this tending exception would apply. Thank you, counsel. If there are no further questions, thank you very much. First, I just wanted to address opposing counsel's remark about whether the Republic steal an authority issue had been raised in our opening brief. I did want to respectfully draw the court's attention to pages 61 and 62 of our opening brief. It wasn't raised for the first time in our library. So I just wanted to make that point. The court had asked about, with respect to discrimination, whether it's sufficient simply to show a difference in treatment. I did want to point out that there is an intent element that's required for showing unlawful discrimination under 883. And here, one of the issues was whether the profit sharing had been offered with the intention to basically induce employees to withdraw their support for the union. On that point, of course, it's been going on since 2005. So it's been going on for 14 years by 2019. But in addition, at that time in September, the parties were in negotiations for a possible new collective bargaining agreement. And in the meeting on September 6th, the company had actually proposed offering all employees profit sharing. The board notes this in the board's brief on page 7. That is inconsistent with the suggestion that the company was using profit sharing to attempt to induce employees to withdraw their support from the union. When it's actually proposing that that become part of the collective bargaining agreement. You go first. Counsel, I'm a little bit confused about how we're supposed to be thinking about intent under 83 if it's a facial discrimination. And that goes to the discussion about Great Dane and about the board's treatment of that. And the board, as we note in our brief, simply didn't discuss all the elements, essentially the burden-shifting process that was put in place by Great Dane. The initial question that should be asked is whether the conduct of this issue falls into inherently destructive conduct or whether it has a comparatively slight effect on employees exercising it. Could you restate that question as we are to look at it according to the standard of review? Um. The board ordinarily the board is entitled to the firm's if there's substantial evidence to support his decision. However, the board misapplies the law. Um. Particularly if there's a question of whether there's an arbitrary or capricious application of the law. This court is not required to defer to the board where it's an arbitrary or capricious application of the law. Especially deviation from, in this case, the Supreme Court precedent, but also from the board's own precedent. Did the company have some obligation under the collective bargaining agreement to notify the union about the implementation of the profit-sharing plan? Wasn't there some duty of disclosure? Your Honor, I don't know off the top of my head what provision might apply to that issue. Particularly where this is an issue of interpretation of the contract. The company may have believed that it was properly, I mean the company did believe that it was properly interpreting the contract. So it may have believed that there was nothing to provide notice on to the union. This goes back to the issue of the board, or the company rather, having mistakenly believed that the pension provisions didn't apply to non-unit members. In that case, even if there were an obligation ordinarily for the company to provide notice, I think the company would just assume that it was properly interpreting the contract at that point. My question is, there's no question that the company discriminated between members and non-members. And it intended to do that. The question then is, do you have to show an intent to discourage union membership by doing so? And what authority do you have that that intent is also needed? We'd have to find it for a moment. I'm afraid I'd have to search for a moment through my brief, Your Honor. But yes, that, I believe the way Your Honor characterized it, is the aggregate. It's not only an intent to discriminate, but an intent, or an intent to treat differently. But an intent, by treating differently, to discourage union membership or to place an imposition on employees' exercise of their Section 8 rights. I seem I'm over my time, Your Honor. Sorry. Anything? No, thank you. Thank you, Counsel. Case is submitted. Counsel are excused.